## J. B. BEAIRD CORPORATION v. WOODARD.*

### No. 4400.

Court of Appeal of Louisiana. Second Circuit.

April 28, 1933.

Melvin F. Johnson, of Shreveport, and Goff & Goff, of Arcadia, for appellant.

Ira J. McConathy, of Baton Rouge, and J. Rush Wimberly, of Arcadia, for appellee.

MILLS, Judge.

Plaintiff brings this suit to recover of defendant the sum of $324.80, charges for repairing an engine belonging to defendant and used by him in the operation of his gin at Ringgold, La.

The engine was purchased secondhand in the early part of the year 1929, from R. L. Efurd, of Shreveport, La.; was used by defendant to gin from 700 to 800 bales of cotton during that season. Because of its excess consumption of fuel and minimum development of power, defendant had decided to discard it and purchase a new engine, when approached by J. W. Fort, machine foreman of plaintiff corporation, with a proposition to repair it. This was verbally agreed to between the parties at Ringgold, in the presence of a man named "Love," a resident of the vicinity.

The defense in the case hinges entirely upon the terms of this agreement. Fort admits that he contracted to put the engine in first-class condition, to the satisfaction of Woodard, who claims that Fort also guaranteed to stop the unreasonable consumption of fuel. This Fort denies. Woodard failing to produce Love as a witness, this specific guaranty is not proven unless Woodard's claim is so supported by the proven facts as to constitute a clear preponderance of the testimony.

After the repairs were completed, the engine was delivered, set up, and thoroughly tested in the presence of defendant, O. L. Hyde, a neighbor who was employed as engineer by the Ringgold Ice Company, J. W. Fort, and W. D. Roark, a machinist working for plaintiff. Though it was too early in the season for cotton to be available to run through the gin, the engine was otherwise thoroughly tried out. All of those present at the test agree that it ran smoothly, quietly, and developed plenty of power. Fort says it made over 120 revolutions to the minute, and had to be throttled down to that number by the use of a governor. Woodard admits that he expressed his complete satisfaction with the results achieved. With the understanding that, if trouble developed in the actual ginning, they were to be notified and given an opportunity to rectify the trouble, plaintiff's representative returned to Shreveport.

The bill not being paid upon presentation, plaintiff initiated the usual series of dunning letters. Those of September 5th and 18th and October 4th and 16th were ignored by defendant. That of November 5th was so insistent that it elicited from Woodard a reply to the effect that the engine had not been improved by the repairs, and that he would give the engine to plaintiff before he would pay the bill. Further correspondence and a visit by Fort accomplishing nothing toward a settlement, this suit was filed.

In the meantime, defendant had finished his ginning for the season, getting all of the use needed out of the engine. It seems that he had two gins, only using the one employing

*Rehearing denied June 5, 1933.

this engine to take care of the overflow from the other gin. Owing to the short crop, this only amounted to 85 bales for the 1930 season. Upon the trial of the case, Woodard testified that the engine, after the repairs, continued to require too much fuel, using from 60 to 70 cords of wood to gin the 85 bales and that it failed to develop sufficient power making not over 80 revolutions to the minute. His gin manager testifies that it used a lot of fuel and would not develop the needed power. Neither of those witnesses point out any particular defect in the engine, contenting themselves with the alleged failure to get results.

Defendant does offer one expert, R. L. Efurd, from whom the engine was purchased, whose testimony is most damaging to the defense. He says that he has been in the machine shop business for 28 years and is thoroughly familiar with steam engines and their repair. He says that the engine was all right in the first place, and that the fuel trouble and the lack of power were due to the fact that defendant was using a boiler too small for the engine; that at defendant's request, after the repairs in question were made, he went to Ringgold, took the engine down, and examined it. He says it was in good shape, and that he could find nothing the matter with it; that the whole trouble was in the insufficiency of the boiler; that running it through the 1929 season with such a boiler would damage the engine.

Fort also attributes this fuel trouble to the boiler and steam pipes, but to their disrepair rather than their size, which he thinks was sufficient when in first-class condition; that fuel consumption is also largely affected by the way the gin is run. He is corroborated as to the condition of the boiler by Roark, who says he offered to fix it, but was told by Woodard that he would mend it with his own men.

It will be seen that defendant can only escape payment of this account in the event that the evidence establishes the fact that Fort unconditionally guaranteed to repair the engine, so as to avoid the large consumption of fuel.

We think, considering that defendant failed to produce the witness, Love, who was present when the agreement was made; that he accepted the engine after the preliminary test; that he used it throughout the ginning season without complaint and without reply to plaintiff's repeated communications; that his sole expert witness, Efurd, testified that the repairs were properly made, and that all the trouble was due to the small boiler; that witness Hyde said that he heard Woodard make no complaint about the engine during the ginning season; that it is not reasonable to believe that Fort, an experienced man, would guarantee that engine repair would correct the fuel trouble which he knew was, or could be caused by other conditions than the defects in the engine; and considering the further fact that the engine has been since destroyed by fire and insurance collected on it by defendant, we feel that the defense has not been sustained.

The judgment appealed from rejecting plaintiff's demand is accordingly reversed, and judgment is now rendered for plaintiff as prayed for; defendant to pay all costs of both courts.